WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Arriaga, | No. CV-16-0755-TUC-LCK |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill, | |
| Defendant. | |

Plaintiff John Arriaga filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Arriaga's Opening Brief, Defendant's Responsive Brief, and Arriaga's Reply. (Docs. 19, 28, 31.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 21.) Based on the pleadings and the administrative record submitted to the Court, the Court remands this matter for further proceedings.

## PROCEDURAL HISTORY

Arriaga received Supplemental Security Income (SSI) as a child for ADHD, beginning in 2002. (Administrative Record (AR) 88.) When SSA reviewed his case as an adult, it determined he was not disabled as of January 13, 2014. (AR 86, 101.) Arriaga then filed an application for SSI on February 12, 2014. (AR 189.) He alleged disability from January 1, 1999. (*Id.*) On June 13, 2014, a disability hearing officer, without holding a hearing, determined that Arriaga was not disabled. (AR 87, 118-26.) Arriaga's application was denied upon initial review (AR 86-104) and on reconsideration (AR 105-

50). A hearing was held on January 8, 2015 (AR 47-85), after which an ALJ found that Arriaga was not disabled because he could perform work available in the national economy (AR 28-39). The Appeals Council denied Arriaga's request to review the ALJ's decision. (AR 5.)

## FACTUAL HISTORY

Arriaga was born on July 20, 1994, making him 5 years of age at the onset date of his alleged disability and 19 at the date of SSA's non-disability finding. (AR 58.) Arriaga never has been employed.

The ALJ found, as of January 13, 2014, Arriaga had three severe impairments, borderline intellectual functioning, mood disorder, and attention deficit disorder (ADD)/ attention deficit hyperactivity disorder (ADHD). (AR 30.) The ALJ determined Arriaga had the RFC to perform light work but should never climb ladders, ropes or scaffolds, and should avoid hazards. (AR 33.) He limited Arriaga to short and simple instructions and simple work-related decisions, and only occasional interaction with the public and co-workers. (*Id.*) The ALJ concluded at Step Five, based on the Medical-Vocational Guidelines, that Arriaga could perform work that exists in significant numbers in the national economy. (AR 38.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI claims. 20 C.F.R. § 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes him from performing his past work. 20 C.F.R. § 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or

"not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. § 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Arriaga argues the ALJ committed five errors: (1) he failed to consider the combined impact of all impairments; (2) he failed to provide clear and convincing reasons for rejecting Arriaga's credibility; (3) he improperly weighed the medical opinion evidence; (4) he failed to develop the record and call a vocational expert; and (5) he cherry-picked and failed to consider properly all evidence. The allegations of Claim 5 will be discussed within Claims 1, 2, and 3.

**Combined Impairments**

Arriaga argues the ALJ failed to consider the impact of all his combined impairments, severe and non-severe, at Step Two and in formulating the RFC.

First, Arriaga cites 20 C.F.R. § 416.923, which requires an ALJ to consider all impairments combined when determining if a claimant satisfies the severity requirement at Step Two. The ALJ found Arriaga had three severe impairments at Step Two. Because Arriaga was not denied at Step Two, he fails to articulate how the ALJ erred by not using all impairments to make a severity finding.

Second, as to Step Two, Arriaga also argues the ALJ failed to find that his right knee problems, flat feet, and asthma were severe. A finding of disability requires an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment." 20 C.F.R. § 416.905. An impairment must last or be expected to last for 12 or more months and must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. §§ 416.908, 416.909. An impairment is "not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 1521.

The medical records reveal Arriaga complained of right knee pain beginning in July 2014. (AR 514.) Arriaga was scheduled for surgery on March 2, 2015. (AR 506.) No records demonstrate knee pain lasting more than 12 months, as required for a severe impairment at Step Two. There are no medical records diagnosing flat feet or documenting any symptoms from flat feet. The only evidence of flat feet comes from Arriaga's self-reports, which is not sufficient to establish an impairment at Step Two. The records reveal a diagnosis of mild asthma and at least periodic use of an inhaler. (AR 512-14.) However, there is no evidence that asthma, flat feet, or knee pain had more than a minimal limitation on his ability to perform basic work activities. Thus, Arriaga fails to establish that the ALJ erred at Step Two.

Finally, Arriaga argues that the ALJ must consider all impairments when determining a claimant's RFC. The only specific argument he makes is that an RFC for light work is inconsistent with his physical impairments because it requires a good deal of walking/standing or pushing/pulling of leg controls. Arriaga argues that he has limitations as to those capabilities due to knee pain, flat feet, and asthma. There are no medical opinions in the record finding physical limitations inconsistent with the exertional requirements of light work. Thus, Arriaga has not established the ALJ erred as to the physical limitations of the RFC. To the extent Arriaga is arguing the ALJ ignored medical evidence of non-exertional limitations when determining his RFC, such as anger, psychotic symptoms, social isolation, paranoia, and learning impairments, the basis of the argument is unclear. Arriaga does not articulate what limitations (as opposed to symptoms) are supported by the record but not included in the RFC.

**Credibility**

Arriaga argues the ALJ failed to provide clear and convincing reasons to reject his testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at

344). The ALJ found Arriaga had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 34.) Next, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). Here, the ALJ did not make a finding of malingering. Therefore, to support his discounting of Arriaga's assertions regarding the severity of his symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

        The ALJ's discussion of credibility is not optimally organized. However, he identifies several reasons to discredit Arriaga's credibility and the Court will consider each in turn. First, the ALJ stated that record did not support disabling mental symptoms or inability to function due to learning disabilities. (AR 34.) The ALJ relied on records from when Arriaga was in high school. Arriaga graduated in 2013, two years before the ALJ issued his decision. Critically, the record reflects that Arriaga's mental health began deteriorating in November 2013 (AR 444); therefore, the high school records do not accurately reflect his mental functioning during the relevant period from 2014 and beyond. The ALJ also relied on Arriaga taking courses at the community college, beginning in January 2014, to support his finding that he could concentrate, perform adequately, and learn new things. (AR 34, 35.) Arriaga enrolled in two "basic" or "remedial" pre-college courses with support from the office for disability services. (AR 59, 482.) In March and April 2014, Arriaga told his counselor that he had no problems in college and was passing without studying. (AR 476, 478.) However, in January 2015, Arriaga reported to his psychiatric NP that he found two classes overwhelming and was going to reduce to one course. (AR 509.) In June 2015, she reported that Arriaga found it hard to concentrate and grasp the material in the classes. (AR 361.) A July 2015 letter from a rehabilitation specialist stated that Arriaga did not pass his remedial classes. (AR

350.) There is not substantial evidence to support the ALJ's reliance on Arriaga's college classes as reflecting concentration and a high level of functioning.

Second, the ALJ concluded that Arriaga was capable of learning new things because his counselor encouraged his parents to teach him to drive. (AR 35.) Arriaga has not alleged that he cannot learn anything new, therefore, this finding does not reflect on his credibility. However, there is record evidence that he has been unable to learn the skills necessary to live independently. (AR 262.) The ALJ relied on one record documenting a therapist and Arriaga's parents discussing a willingness to teach Arriaga to drive. (AR 476.) At numerous points in the record, Arriaga reports that he has not learned to drive because he is afraid he will get angry while driving and have to pull over or hurt someone. (AR 82, 398, 484.) There is not substantial evidence to support the ALJ's finding that Arriaga's impairments are not as limiting as alleged because a therapist believed him capable of learning to drive.

Third, the ALJ relied on record evidence that Arriaga was not fully compliant with treatment. (AR 36.) Arriaga stopped taking seizure medication and ADHD medication. (*Id.*) The cessation of these medications occurred sometime before Arriaga reached adulthood, during a period not relevant to his adult disability application. The ALJ has not identified any record evidence that Arriaga has not been compliant with medications prescribed to him as an adult. Further, as an adult, Arriaga has been prescribed Concerta to improve his concentration and focus, and there is no record evidence he was not compliant with that prescription. (AR 73, 489, 495.)

Fourth, the ALJ relied on improvement in Arriaga's mental health symptoms due to medication. (AR 35.) Even the ALJ acknowledges that Arriaga had at best "some improvement." (*Id.*) The record indicates that medication reduced but did not eliminate Arriaga's auditory hallucinations, he continued to see a shadow and have difficulty sleeping, felt paranoid, and continued to be depressed and angry. (AR 361-62, 484, 489, 509, 528.) Arriaga's limited progress in response to medication is not a clear and convincing reason to discount his credibility. The record as a whole demonstrates that

Arriaga continued to experience significant mental health symptoms after numerous medication trials. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms.").

Fifth, the ALJ found that Arriaga's activities of daily living are not as limited as expected based on the assertion of disability; rather, they suggest a significant degree of overall functioning. (AR 36.) The ALJ cites Arriaga's activities such as fishing, tennis, video gaming, household help, living with a girlfriend, and socializing with family and college friends. (*Id.*) Critically, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). However, if a claimant's activities contradict his testimony, or the claimant spends a substantial portion of his day at activities that involve skills transferable to a work setting, those circumstances can form the basis for an adverse credibility determination. *See Orn*, 495 F.3d at 639.

The ALJ's findings about Arriaga's activities are not fully supported by the record. Although Arriaga mentions fishing and tennis, there is no indication that happened more than infrequently. (AR 247.) In contrast, numerous records indicate Arriaga lived a sedentary lifestyle. (AR 74, 244, 246, 480, 484.) Arriaga's treating mental health provider noted that Arriaga never lived with a girlfriend, that fact had been documented in error. (AR 361.) The record as a whole, particularly the later documents, indicated Arriaga spent large amounts of time alone and rarely socialized. (AR 398: December 2013, Arriaga reported that he was "sometimes comfortable around people" but didn't ride public transport because he didn't want to talk to people; AR 447: January 2014, Arriaga stated that he did not have a social life and rarely went anywhere without his mother; AR 472: April 2014, being around other kids made him anxious and angry; AR 485: September 2014, he had "some friends" but only messaged on Facebook and

spent some time with younger cousins; AR 64, 66: May 2015, he made unsuccessful efforts to spend time with friends but spent a lot of time alone.)

During 2014 and 2015, Arriaga's typical day involved attending remedial college courses (but not doing the assigned homework), helping some around the house and with pet care, playing video games, and occasional shopping with his mother. (AR 398, 442.) The limited activities that are supported by the record neither contradict Arriaga's testimony nor equate to spending a substantial portion of his day at skills transferable to the work place. Arriaga's daily activities are not a clear and convincing reason supported by substantial evidence to discount his credibility.

The remaining basis for discounting Arriaga's credibility is the objective medical evidence. If the objective medical evidence fully explained a claimant's symptoms then credibility would be irrelevant. Credibility factors into the ALJ's decision only when the claimant's stated symptoms are not substantiated by the objective medical evidence. SSR 96-7p. Thus, it is error for an ALJ to discount credibility solely because a claimant's symptoms are not substantiated by the medical evidence. *Id.*; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). As this is the only basis remaining for the ALJ's credibility finding (AR 36) it is insufficient to sustain it. Additionally, the ALJ did not delineate with any clarity what "objective medical evidence" was contrary to Arriaga's symptom testimony.

In sum, the ALJ failed to provide clear and convincing reasons supported by substantial record evidence to support his credibility finding.

**Medical Opinion**

Arriaga argues that evidence showed he had a limited RFC but the ALJ failed to give proper weight to the opinions of psychologist Carlos Vega, counselor Yassar Canchola, treating psychiatric nurse practitioner Linda Banzinger, and psychologist Machelle Martinez. In determining a claimant's RFC, the ALJ must consider "any statements about what you can still do" from medical sources or other persons that observe the claimant's limitations. 20 C.F.R. § 416.945(a)(3).

Psychologist Carlos Vega examined Arriaga on September 10, 2014, at the request of his mental health treatment team. (AR 483.) Although Dr. Vega summarized Arriaga's current symptoms and conducted testing he did not evaluate what Arriaga "could still do" in a work setting. (AR 483-86.) The ALJ stated that he considered this evaluation in conjunction with the entirety of the treatment records but that the psychologist had not provided a functional assessment. (AR 36.) Arriaga relies on the following portions of Dr. Vega's report: Arriaga was "far from thinking about living independently," he was immature, a diagnosis of major depression with mood congruent psychotic symptoms, and a recommendation for more extensive psychiatric and psychological intervention. (Doc. 19 at 16.) Plaintiff fails to articulate what portion of the RFC is inconsistent with an opinion of Dr. Vega, other than a general statement that the psychologist found Arriaga's impairments severe. Plaintiff fails to establish that the ALJ erred in evaluating the report by Dr. Vega.

Similarly, Yassar Canchola did not offer a functional evaluation of Arriaga's work abilities; he merely restated Arriaga's current diagnosis, medications, and status. (AR 505.) Plaintiff fails to point to any opinion of Canchola that the ALJ failed to properly weigh.

Treating nurse practitioner Linda Banzinger found Arriaga had significant functional limitations: he was markedly limited in remembering work-like procedures, understanding/remembering/carrying out detailed instructions, maintaining attention/ concentration for extended periods, performing within a schedule, working in proximity with others, completing a normal work week without psychological interruption, interacting with the public, accepting criticism, getting along with coworkers, maintaining socially appropriate behavior, responding to work changes, traveling to unfamiliar places, and planning independently; and moderately limited in understanding/ remembering/carrying out simple instructions, sustaining a routine without supervision, making simple work-related decisions, asking simple questions, and being aware of hazards. (AR 526-27.) She noted that his employment capabilities were limited by

emotional instability. (AR 528.) The ALJ stated that he gave this opinion partial weight in light of the treating relationship. (AR 37.) The ALJ did not clarify what portions of her opinion, if any, he accepted. The RFC, however, is much less restrictive than Banzinger's findings.

To reject the opinion of a nurse practitioner, an ALJ must provide germane reasons. *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (noting that the regulations are outdated to the extent a treating nurse practitioner is considered an "other source" not a "medical source"). The ALJ rejected the opinion of Banzinger because he concluded her findings were not supported by the treating notes that document Arriaga's daily activities, college attendance, and family and other relationships. (*Id.*) As discussed above in the section on credibility, there is not substantial record evidence to support the ALJ's conclusion that Arriaga's daily activities, college attendance, and relationships demonstrate a high level of functioning consistent with the ALJ's RFC finding. Because this was the only basis on which the ALJ relied to discount the opinion of Banzinger, he erred in rejected her opinion without a germane reason.

Psychologist Machelle Martinez conducted an exam of Arriaga in December 2013 and issued a psychological medical source statement. (AR 402.) She found Arriaga had moderate limitations in concentration, maintaining socially appropriate behavior, and accepting instruction; and mild limitations in understanding and remembering simple instructions, completing simple tasks, adjusting to change, and taking appropriate action. (*Id.*) She concluded Arriaga could maintain work attendance. (*Id.*) The ALJ did not mention Dr. Martinez's opinion in his decision. The ALJ concluded Arriaga could respond appropriately to supervisors (AR 33), which could be interpreted as a rejection of Dr. Martinez's opinion that Arriaga was moderately limited in accepting instruction.[1] Additionally, Dr. Martinez found moderate limitations in concentration that are not

---

[1] Drs. Goldberg and Novak found Arriaga had moderate limitations in interacting with the public and coworkers. (AR 427, 463.) Based on those opinions, the ALJ concluded Arriaga was limited to occasional interaction with the public and coworkers. Thus, if the ALJ had adopted a moderate limitation in accepting instruction, that should have resulted in a limitation on supervision as well.

- 11 -

clearly reflected in the ALJ's decision. It was error for the ALJ to reject portions of Dr. Martinez's opinion without explanation. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

**CONCLUSION**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). The Court found that the ALJ erred in rejecting the testimony of nurse practitioner Banzinger without a germane reason, in rejecting the opinion of examining psychologist Machelle Martinez without explanation, and in discounting Arriaga's credibility without clear and convincing reasons supported by substantial evidence. When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004).

Although Arriaga requests a remand for an award of benefits, he fails to set forth the basis for such a remand. He does not articulate how the current record establishes that he is disabled. To the contrary, he argues that the ALJ was required to further develop the record and obtain the testimony of a vocational expert. The Court agrees that further development upon remand is required.

Because the Court is remanding the matter for further development, it need not rule on Arriaga's claim that the ALJ erred in not further developing the record and obtaining the testimony of a vocational expert. At the hearing, the ALJ noted that the record he was looking at was a "different animal" than had been reviewed in the earlier administrative proceedings. (AR 84.) The Court agrees. Arriaga began experiencing significant anger and depression in November 2013. (AR 444.) He first reported auditory and visual hallucinations in July 2014. (AR 464.) The state agency examiners, to whom the ALJ gave great weight, conducted their reviews in January and April 2014. (AR 412-28, 463.) Therefore, these reviewers had not seen the scope of Arriaga's 2014 mental health records documenting his developing symptoms including psychosis. The ALJ

rejected the only opinion on Arriaga's functional abilities by a mental health professional (psychiatric nurse practitioner Banzinger) that had examined Arriaga in the 18 months prior to the ALJ's decision. Instead, the ALJ based the RFC entirely on the stale opinions of non-examining physicians. After the ALJ reconsiders the opinions of Banzinger and Martinez, he may need to obtain a current functional review by a consulting examiner. Additionally, the testimony of a vocational expert may be necessary after the ALJ re-determines Arriaga's non-exertional limitations.

Accordingly,

**IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court should enter judgment and close this case.

Dated this 26th day of March, 2018.

_____
Honorable Lynette C. Kimmins
United States Magistrate Judge